**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | § § § | CHAPTER 11 |
| | § | SECTION A |
| | § | |
| DEBTOR. | § | COMPLEX CASE |
| | § | |
| RICHARD TRAHANT AND AMY O. TRAHANT, | § § § § | |
| PLAINTIFFS, | § | ADVERSARY NO. 23-1018 |
| | § | |
| V. | § § | |
| MARK A. MINTZ, JONES WALKER LLP, AND DONLIN RECANO & COMPANY, INC., | § § § § | |
| DEFENDANTS. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a *Motion To Remand* filed on behalf of Richard Trahant and Amy O. Trahant (the "Trahants"), the Plaintiffs in the above-captioned adversary proceeding. [ECF Doc. 2]. Mark A. Mintz, Jones Walker LLP, and Donlin Recano & Company, Inc. (the "Defendants") oppose the motion, [ECF Doc. 21], and the Trahants filed a reply brief in support of their motion, [ECF Doc. 40]. For the following reasons, the Court DENIES the Motion To Remand.

**PROCEDURAL POSTURE**

On May 1, 2020, The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese" or, post-petition, the "Debtor") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code in this Court. [No. 20-10846, ECF Doc. 1]. Prior to filing, the Archdiocese had been defending against at least 34 pending lawsuits filed in Louisiana state

court between 2018 and 2020 by individuals alleging claims of sexual abuse by priests or lay persons employed or supervised by the Archdiocese and complicity of the Archdiocese in that abuse (the "Abuse Cases"). Richard Trahant represented plaintiffs in some of the Abuse Cases. When the Archdiocese filed its petition for bankruptcy relief, all of the Abuse Cases were stayed pursuant to 11 U.S.C. § 362(a), but several of the plaintiffs and their counsel in the Abuse Cases, including Trahant, mobilized quickly and have participated from the very start of the Debtor's bankruptcy case.

The Office of the United States Trustee ("UST") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1) on May 20, 2020, and reconstituted the membership of the Committee a number of times to deal with the contours of the case. [No. 20-10846, ECF Docs. 94, 151, 478, 1575, 1618 & 2081]. Early in the case, the Court approved the Committee's retention of the law firms of Locke Lord LLP and Pachulski Stang Ziehl & Jones LLP as counsel for the Committee. [No. 20-10846, ECF Docs. 256 & 257]. Individual members of the Committee retained their own counsel to advise them regarding their individual claims against the estate and to assist them in fulfilling their duties as members of the Committee. For two years, Richard Trahant served as counsel to several individual members of the Committee.

In January 2022, the Debtor notified the Court of its belief that individual(s) had breached this Court's Protective Order governing discovery exchanged between the Debtor and the Committee in the Debtor's bankruptcy case. The Debtor requested discovery from the Committee and an evidentiary hearing to determine the root of the breach. After months of informal discovery between the parties followed by an official independent investigation by the UST involving numerous depositions and robust discovery, the Court memorialized and detailed

its conclusions in a *Memorandum Opinion and Order* dated June 7, 2022. In that Order, the Court found, among other things, that Trahant had knowingly and willfully violated the Protective Order by disclosing confidential, protected information obtained through discovery in the bankruptcy case to third parties including the media. The Court's June 7, 2022 Order also instructed the UST to remove the individual Committee members represented by Trahant from the Committee. A week later, the Court issued a separate *Order To Show Cause* to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of the Court's Protective Order. Months later, the Court held the show-cause hearing. After considering attorney argument and sworn testimony provided by Trahant at that hearing, the Court issued a *Memorandum Opinion and Order* dated October 11, 2022, detailing the factual and legal bases for imposing sanctions against Trahant in the amount of $400,000 for willfully violating this Court's Protective Order. That amount represented a fraction of the billable time spent by counsel for the Debtor and the Committee in investigating the source of the leak for months and participating in the formal, independent investigation conducted by the UST. [No. 20-10846, ECF Docs. 1574, 1589 & 1844].[1]

On June 2, 2023, the Trahants filed a *Petition for Damages* in Louisiana state court against the Defendants, asserting claims for abuse of process, intentional and negligent infliction

---

[1] Trahant and individual former members of the Committee appealed those Orders to the United States District Court for the Eastern District of Louisiana. *See In re The Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1738 (E.D. La. Aug. 11, 2022) (ECF Doc. 38 (dismissing former Committee members' appeal for lack of standing)) & (E.D. La. June 21, 2023) (ECF Doc. 74 (declining Committee members' request to vacate ECF Doc. 38)); *In re Roman Catholic Church of the Archdiocese of New Orleans*, Nos. 22-1740 c/w 22-4101 (E.D. La. Mar. 27, 2023) (ECF Doc. 88 (affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022); *In re Roman Catholic Church of the Archdiocese of New Orleans*, Nos. 22-1740 c/w 22-4101 (E.D. La. June 21, 2023) (ECF Doc. 107 (denying Trahant's motions for rehearing and to vacate ECF Doc. 88 and corresponding judgments, but substituting Order and Reasons affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022). The matters are now pending on appeal with the United States Court of Appeals for the Fifth Circuit. *See Trahant v. Official Comm. of Unsecured Creditors*, No. 23-30466 (filed July 21, 2023) (consolidated with No. 22-30539).

of emotional distress, and loss of consortium, all in connection with the Defendants' alleged improper service of this Court's June 7, 2022 Order (the "State Court Action"). [ECF Doc. 7]. The Defendants timely removed the State Court Action to the United States District Court for the Eastern District of Louisiana under 28 U.S.C. §§ 1441, 1446, and 1452, and the case was assigned to Judge Ashe. [E.D. La. No. 23-2053, ECF Doc. 1]. The Trahants filed the Motion To Remand in the District Court and asked that the State Court Action be remanded. [E.D. La. No. 23-2053, ECF Doc. 9].

The Defendants requested Judge Ashe to refer the State Court Action to this Court pursuant to the District Court's local rules and its General Order of Reference, asserting that the Trahants' lawsuit was not only "related to" the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(b), but that the lawsuit implicates the long-standing *Barton* doctrine, a common-law principle that bars suits against court-appointed trustees and other fiduciaries absent court permission. [E.D. La. No. 23-2053, ECF Doc. 11 (citing *Barton v. Barbour*, 104 U.S. 126, 128 (1881)]. On July 14, 2023, Judge Ashe referred the State Court Action to this Court for all purposes, finding that

> the most efficient course of action for the administration of justice, in general, and this case, in particular, is to refer to the case to the bankruptcy judge for determination in the first instance of the issues raised by the motion to remand. At bottom, the case was removed on grounds of bankruptcy jurisdiction because the plaintiffs' claims revolve around the interpretation, implementation, and enforcement of an order of the bankruptcy court. It appears to this Court, then, that the notice of removal invokes federal bankruptcy jurisdiction because the plaintiffs' claims constitute either a core proceeding [under 28 U.S.C. § 157(b)(2)] . . . or, at least, a proceeding related to a title 11 case. However, the determination of these threshold issues, as raised by the motion to remand, are left to the bankruptcy judge, who is well-equipped to address such matters (notwithstanding this Court's preliminary observations) given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function under the *Barton* doctrine, which vests only the bankruptcy court with the authority to grant leave for the pursuit of any claims directed against officials appointed by the bankruptcy court concerning acts done in their official capacity.

4

[E.D. La. No. 23-2053, ECF Doc. 12 (internal quotations and citation omitted)]. Upon referral to this Court, the Trahants' State Court Action was docketed as the Adversary Proceeding. On August 15, 2023, Judge Ashe denied the Trahants' motion to reconsider his decision and withdraw his referral of the State Court Action to this Court, writing:

> [T]he Court again concludes that reference to the bankruptcy court for the determination of certain pretrial issues (including subject-matter jurisdiction) in the first instance is appropriate where plaintiffs' claims and their pending motion to remand implicate the bankruptcy court's gatekeeping function under the *Barton* doctrine. . . . And relatedly, under its gatekeeping function, the bankruptcy court is empowered to determine—in the first instance—whether subject-matter jurisdiction exists, and so it may properly adjudicate plaintiffs' motion to remand. Thus, plaintiffs' contention that reversal or withdrawal of the reference is proper because the action fails even to invoke "related to" jurisdiction under 28 U.S.C. § 1334(b) is inapposite.

[E.D. La. No. 23-2053, ECF Doc. 18 (internal quotations and citations omitted)].

## DISCUSSION

The Defendants removed the Trahants' State Court Action to the District Court under 28 U.S.C. §§ 1441, 1446, and 1452.[2] With some exceptions not applicable here, § 1452 allows a party to remove "any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). The Trahants seek remand of the State Court Action, asserting that "the Court lacks federal subject matter jurisdiction over the action." Motion To Remand, Mem. at 1. The Trahants also assert that mandatory abstention under 28 U.S.C. § 1334(c)(2) applies here or, alternatively, ask this Court

---

[2] "Except where expressly prohibited by Congress, 28 U.S.C. § 1441 allows a defendant to remove 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Cristea v. ArborPro, Inc.*, No. 23-02768, 2023 WL 7297982, at *1 (E.D. La. Nov. 6, 2023) (quoting 28 U.S.C. § 1441(a)). Section 1446 governs the procedure for removal of civil actions.

to exercise its discretion to abstain from hearing the State Court Action and allow it to proceed in state court pursuant. *See* Motion To Remand, Mem. at 7–9.

Jurisdiction is assessed based on the facts as they existed at the time of removal. *See Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014). "Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand." *Alexander v. Travelers Indemnity Co.*, 625 F. Supp. 3d 512, 517 (E.D. La. 2022) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "The party seeking removal has the burden of establishing that federal subject-matter jurisdiction exists and that removal was proper." *Id*. (citing *Manguno*, 276 F.3d at 723).[3]

---

[3] "For purposes of determining whether removal was proper in the first instance . . . the party seeking removal need only show that, under the minimum requirements of 'related-to' jurisdiction, 'the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . [or] the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handline and administration of the bankruptcy estate." *Hadi v. McCune Wright Arevalo LLP*, No. 18-05104, 2018 WL 6675622, at *4 (C.D. Cal. Dec. 17, 2018) (quoting *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988)); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (holding that a matter is "related to" a bankruptcy case as that phrase is used in 28 U.S.C. § 1334(b) if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy"). As explained by the Eleventh Circuit:

> The . . . test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Lawrence v. Goldberg*, 573 F.3d 1265, 1270–71 (11th Cir. 2009) (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)).

The Trahants' State Court Action asserts claims against the Defendants for actions taken in the course of their official duties as estate professionals in executing an Order of this Court, the resolution of which certainly impacts the handling and administration of the Debtor's bankruptcy estate. For the reasons discussed below, *see* discussion *infra* Subpart B, the Court finds that the claims asserted in the Trahants' State Court Action are more than just "related to" the Debtor's bankruptcy case. But at a minimum, the State Court Action is indeed "related to" the Debtor's bankruptcy case. *See Lawrence*, 573 F.3d at 1271; *In re Wood*, 825 F.2d at 93. Therefore, the Court finds that the Defendants have made a

### A. As an Initial Matter, the *Barton* Doctrine Requires That the Claims Asserted in the State Court Action Either Be Brought in this Court or With Leave of this Court To File the Claims in Another Venue.

"First articulated by the Supreme Court in *Barton v. Barbour*, 104 U.S. 126 (1881), the *Barton* doctrine provides that a party may not bring a lawsuit against a court-appointed receiver for acts done in the receiver's official capacity, unless the appointing court has affirmatively granted leave to sue." *Hadi v. McCune Wright Arevalo LLP*, No. 18-05104, 2018 WL 6675622, at *4 (C.D. Cal. Dec. 17, 2018) (citations omitted). "Part of the rationale for the *Barton* doctrine is that the appointing court has in rem subject-matter jurisdiction to entertain a lawsuit against the court-appointed official overseeing property in the court's 'possession.'" *Id.* (citing *Barton*, 104 U.S. at 136–37). "The Supreme Court reasoned that allowing plaintiff's action to proceed without leave of the appointing court would have been 'an usurpation of the powers and duties which belonged exclusively to [the appointing] court." *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (quoting *Barton*, 104 U.S. at 136). Thus, "[t]he *Barton* doctrine is a practical tool to ensure that all lawsuits that could affect the administration of the bankruptcy estate proceed either in the bankruptcy court, or with the knowledge and approval of the bankruptcy court." *Hadi*, 2018 WL 6675622, at *4 (quoting *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742 (9th Cir. 2009)). Moreover, "claims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the [plaintiff] alleges such acts were taken with improper motives." *Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012).

---

sufficient showing that federal subject-matter jurisdiction exists and removal was proper under 28 U.S.C. § 1452(a).

The Fifth Circuit applies the *Barton* doctrine to lawsuits against court-appointed fiduciaries of the estate. *See, e.g., Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872, at *5 (5th Cir. Jan. 3, 2023) ("Under [the *Barton*] doctrine, before a plaintiff can sue a bankruptcy trustee, or a court-approved professional employed by a bankruptcy trustee such as counsel for the trustee, in a forum other than the appointing court, leave of the appointing court must be obtained."); *NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 439 (5th Cir. 2022) ("Under the *Barton* doctrine, the bankruptcy court may require a party to obtain leave of the bankruptcy court before initiating an action in district court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." (internal quotations and citation omitted)); *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015) ("[A] party must continue to file with the relevant bankruptcy court for permission to proceed with a claim against the trustee.").

A plain reading of the allegations and claims asserted in the Trahants' State Court Action against the backdrop of events that have unfolded in the Debtor's bankruptcy case reveals that all of the claims asserted in the State Court Action arise from the Defendants' roles as Debtor's professionals in the underlying bankruptcy case, specifically, their obligations and conduct as professionals of the Debtor to serve this Court's Order of June 7, 2022.[4] The Trahants did not move this Court for leave to assert their claims against the Defendants in a forum other than this Court prior to filing their lawsuit in state court. Under the *Barton* doctrine, without leave of this

---

[4] In chapter 11, with few exceptions, a debtor in possession has all of the rights, duties, and powers as a trustee. *See* 11 U.S.C. § 1107(a); *see also* FED. R. BANKR. P. 9001(11) (defining "Trustee" to "include[] a debtor in possession in a chapter 11 case"). Further, counsel and other professionals retained by a trustee or debtor in possession with court approval are treated as functional equivalents of the trustee or debtor in possession. *See, e.g.*, *Allard v. Weitzman*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("We hold, as a matter of law, counsel for the trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.").

8

Court, no other court enjoys subject-matter jurisdiction over the State Court Action. For this reason alone, the Motion To Remand must fail. *See, e.g.*, *Hadi*, 2018 WL 6675622, at *9.

### B. The State Court Action Is a "Core Proceeding" That This Court May Hear and Determine on a Final Basis.

Section 1334 grants district courts "original and exclusive jurisdiction" over all cases "under title 11," that is, the Bankruptcy Code. 28 U.S.C. § 1334(a). Under that section, the district courts also enjoy "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "The distinction between cases that 'arise under' or 'arise in' Title 11, on the one hand, and cases that are 'related to' Title 11, on the other hand, 'has significance as a jurisdictional consideration.'" *Hadi*, 2018 WL 6675622, at *3 (quoting *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995)).

"The bankruptcy courts in turn draw their jurisdiction from the district courts under 28 U.S.C. § 157(a)." *In re Foster*, 2023 WL 20872, at *2 (internal quotations and citation omitted). "A bankruptcy court's statutory authority derives from 28 U.S.C. § 157(b)(1), which designates certain matters as 'core proceedings' and authorizes a bankruptcy court to determine the matters and enter final judgments." *Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 323 (5th Cir. 2016) (citation omitted). Section 157(b)(2) provides a non-exclusive list of proceedings that are considered to be "core proceedings." To distinguish "core" from "non-core" proceedings, the Fifth Circuit has explained:

> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision if title 11. Apparently, the phrase was taken from 28 U.S.C. § 1331, conferring federal jurisdiction in which it carries a similar and well-accepted meaning. The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise only in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly

9

> created by title 11, but nevertheless, would have no existence outside of the bankruptcy.
>
> As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceedings; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 607 (S.D. Tex. 1999) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96–97 (5th Cir. 1987)). The Trahants argue that the claims asserted in the State Court Action are not "core proceedings" because "the Trahants and all defendants in this case are 'non-debtors,' and the Trahants only have advanced state law causes of action." Motion To Remand, Mem. at 8. Viewing the State Court Action in the context of events that have transpired in the Debtor's bankruptcy case, however, indicates otherwise.

This Court is responsible to determine "whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id.*; *see also Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931 (5th Cir. 1999) ("To begin with, the state law origin of [plaintiff's] claims is not dispositive . . . . That [plaintiff's] claims against the court-appointed accountant for its examiner arose under state law does not prevent them from involving core jurisdiction."). On its face, the State Court Action asserts claims that arise from the Defendants' roles as Debtor's professionals in the underlying bankruptcy case, specifically, their obligations and conduct as professionals of the Debtor to

10

serve this Court's Order of June 7, 2022. Those claims could not exist outside of the bankruptcy context and are thus considered to be "core" matters upon which this Court may enter final judgment. As explained recently by the Fifth Circuit in a comparable case:

> Claims against a trustee and the trustee's counsel for their actions in a bankruptcy proceeding are the type of claims that could not arise outside of the context of the underlying bankruptcy case . . . . [Plaintiff] claims that the face of her complaint only raises state law claims. However, this argument is unpersuasive when, as is the case here, the claims could not arise outside of the bankruptcy context. **As a result, [Plaintiff's] argument that the bankruptcy court could not enter final judgment is meritless.**

*Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872, at *2–3 (5th Cir. Jan. 3, 2023) (emphasis added) (citing *In re Southmark Corp.*, 163 F.3d at 930–31 (holding that claims alleged in a removed state court lawsuit against debtor's court-appointed accountant "involve[d] the nature of the services for the debtor's estate" and were, therefore, "core" matters)); *see also Lowenbraun v. Canary, Jr. (In re Lowebraun)*, 453 F.3d 314, 321 (6th Cir. 2006) (holding that plaintiff's removed state court lawsuit against trustee's counsel asserting claims arising from counsel's conduct during the course of the bankruptcy case to be a "core proceeding"); *Hadi*, 2018 WL 6675622, at *9 (same). For these reasons, this Court may exercise subject-matter jurisdiction over the State Court Action and enter final judgment.

### C. Mandatory Abstention Is Not Applicable Here and This Court Declines To Exercise Permissive Abstention.

The Fifth Circuit has interpreted 28 U.S.C. § 1334(c)(2)

> to mandate federal court abstention where '(1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11 but does not arise under or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

*Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007). Relying on that reading of the statute, the Fifth Circuit has concluded

11

that "[m]andatory abstention does not apply to core proceedings." *In re Foster*, 2023 WL 20872, at \*3. Because the claims asserted in the State Court Action are "core proceedings," mandatory abstention is not applicable.[5]

Alternatively, the Trahants request the Court to exercise its discretion to abstain from hearing the State Court Action in favor of allowing it to proceed in state court. Section 1334 of Title 28 of the United States Code provides an avenue for such "permissive" abstention:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). "Abstention is an extraordinary and narrow exception to the duty of a federal court to exercise the jurisdiction conferred and adjudicate a controversy properly before it." *Foster v. Holder (In re Foster)*, Adv. No. 19-04131, 2020 WL 612915, at \*18 (Bankr. N.D. Tex. Oct. 15, 2020), *aff'd*, *Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023). Indeed, "[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation omitted). Pursuant to the Supreme Court's instruction, permissive abstention is confined to three general categories:

> (1) cases presenting a federal constitutional issue with might be mooted or presented in a different posture by a state court determination of pertinent state law; (2) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; and (3) where, absent bad faith, harassment, or a patently invalid

---

[5] Even if the claims asserted in the State Court Action were merely "related to" the Debtor's bankruptcy case, mandatory abstention would not apply here. "With regard to abstention, non-core proceedings, though based upon State law claims, are not subject to the mandatory abstention requirements of 28 U.S.C. Section 1334(c)(2)." *McGraw v. Liberty Airlines, Inc.*, 55 B.R. 872, 876 (Bankr. N.D. Ohio 1985) (citing 28 U.S.C. § 157(b)(4)).

state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.

*Houston Baseball Partners LLC v. Comcast Corp. (In re Houston Reg'l Sports Network, L.P.)*, 514 B.R. 211, 217–18 (Bankr. S.D. Tex. 2014) (citing *Colorado River Water Conservation Dist.*, 424 U.S. at 814–16). Courts, however, have distinguished *Colorado River* abstention from statutory abstention under § 1334(c), finding that bankruptcy courts enjoy broad discretion on whether or not to abstain from adjudicating claims. *See, e.g.*, *Bricker v. Martin*, 348 B.R. 28, 32–33 (W.D. Pa. 2006); *Special Value Continuation Partners, L.P. v. Jones*, Adv. No. 11-3304, 2011 WL 5593058, at *8 (Bankr. S.D. Tex. Nov. 10, 2011); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 424–25 (Bankr. S.D. Tex. 1987). As explained by the *Houston Regional Sports Network* court:

> The proposition that bankruptcy court have broad discretion on whether to abstain comes from both the plain language of the statute and the Fifth Circuit's decision in *Wood v. Wood* [825 F.2d at 93]. Section 1334(c)(1) is a broadly worded statute allowing federal courts to decline to exercise jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." In *Wood*, the Fifth Circuit noted that the discretionary abstention provision of § 1334(c)(1) helps prevent the broad language of § 1334(b) from bringing into federal court matters which should be left to state court to decide.

*In re Houston Reg'l Sports Network, L.P.)*, 514 B.R. at 218 (internal citations omitted).

Courts have identified several factors that may be considered when determining whether to postpone the exercise of its jurisdiction:

(1) the effect or lack thereof on the efficient administration of the estate if the court decides to abstain;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficult or unsettled nature of applicable law;

(4) the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding;

(5) any jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the proceeding on the court's docket;

(10) the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*In re Foster*, 2020 WL 6127915, at *18 (citing cases); *see also Doe v. Archdiocese of New Orleans Indemnity, Inc.*, No. 20-1338, 2020 WL 4593443, at *4 (E.D. La. Aug. 11, 2020). In the end, "[w]hether permissive abstention is appropriate in a given case will, of necessity, be driven by equitable considerations germane to that case." *Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Grant Thornton, L.L.P. (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006). "The court's decision to abstain or not will only be disturbed upon a showing of an abuse of discretion." *Id*. (citing *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 (5th Cir. 1990)).

After considering that non-exclusive list of factors, the Court finds no cause to abstain from hearing and deciding the State Court Action. First and foremost, comity favors retention of the case in this Court, given the fact that the Trahants are prohibited by the *Barton* doctrine from prosecuting their claims in state court. Moreover, the resolution of the claims asserted in the State Court Action are wholly dependent upon this Court interpreting its own Orders and the

execution of those Orders. *See Burch v. Freedom Mortg. Corp. (In re Burch)*, No. 20-10498, 835 F. App'x 741, 748 (5th Cir. 2021) ("A bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders." (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Despite the Trahants' endeavor to fashion the State Court Action otherwise, the claims asserted in the State Court Action are "core" claims that do not exist outside of the bankruptcy context; therefore, state law issues do not begin to predominate the bankruptcy issues at stake. No undue burden to this Court's docket will result from retaining jurisdiction over the State Court Action and no evidence of prejudice to any party has been presented to the Court.

### D. The Trahants' Request To Certify This Order for Direct Appeal to the Fifth Circuit Court of Appeals Is Premature.

The Trahants have requested that, in the event that the Court denies their Motion To Remand, the Court certify its Order for direct appeal to the Fifth Circuit. *See* Motion To Remand, Mem. at 17–18.[6] An order denying a motion to remand is not appealable as a final decision. *See Baker v. Amazon Logistics, Inc.*, No. 23-3991, 2023 WL 7683823, at *5 (E.D. La. Nov. 15, 2023). Section 158(a)(3) of Title 28 of the United States Code and Rule 8004 of the Federal Rules of Bankruptcy Procedure govern appeals of interlocutory orders or decrees of a bankruptcy court. Section 158(a)(3) requires leave of the bankruptcy court to appeal an interlocutory order.

Direct appeal to the appropriate court of appeals is available

---

[6] The Trahants filed the Motion To Remand in the District Court upon removal from state court and thus cited 28 U.S.C. § 1292(b) as the basis for requesting direct certification. That section identifies the standard used by district courts in determining whether to allow an appeal of interlocutory orders. A district court will allow an interlocutory appeal if it finds that "a non-final order '[1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Shops & Garage at Canal Place, L.L.C. v. Wilson Canal Place II, LLC*, No. 20-2271, 2021 WL 354444, at *4 (E.D. La. Feb. 2, 2021) (quoting 28 U.S.C. § 1292(b)). That standard tracks, but is not identical to, the standard bankruptcy courts are required to use to certify an interlocutory order for direct appeal to a circuit court of appeals.

    (a)    if the bankruptcy court, the district court, or the bankruptcy appellate panel involves, acting on its own motion or on the request of a party to the judgment, order, or decree . . . or all the appellants and appellees (if any) acting jointly, certify that—

        (i)    the judgment, order, or decree involves a questions of law as to which there is not controlling decision of the courts of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

        (ii)    the judgment, order, decree involves a question of law requiring resolution of conflicting decisions; or

        (iii)    an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. § 158(d)(2). Bankruptcy Rule 8004(e) states that "[i]f leave to appeal an interlocutory order or decree is required under 28 U.S.C. § 158(a)(3), an authorization of a direct appeal by the court of appeals under 28 U.S.C. § 158(d)(2) satisfies the requirement." Rule 8006 of the Federal Rules of Bankruptcy Procedure outlines the process for certifying a direct appeal to the Court of Appeals.

The Court declines at this time to consider the Trahants' request for direct certification as the matter is not ripe before this Court.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion To Remand, [ECF Doc. 2], is **DENIED**.

New Orleans, Louisiana, this 30th day of November, 2023.

                                                                                 _____
                                                                             MEREDITH S. GRABILL
                                                         UNITED STATES BANKRUPTCY JUDGE