## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | § § § § | CHAPTER 11 |
| DEBTOR. | § § § | SECTION A |
| | § | |
| RICHARD C. TRAHANT AND AMY O. TRAHANT, | § § § | |
| PLAINTIFFS, | § § § | |
| V. | § § | ADV. NO. 23-1018 |
| MARK A. MINTZ, JONES WALKER, LLP, AND DONLIN RECANO & COMPANY, INC., | § § § § | |
| DEFENDANTS. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following matters pending in the above-captioned adversary proceeding:

1.  *Motion for Summary Judgment and Incorporated Memorandum in Support* with a statement of uncontested facts and exhibits attached (the "Motion for Summary Judgment"), filed by Mark A. Mintz, Jones Walker, LLP, and Donlin Recano & Company, Inc. (collectively, the "Defendants"), [ECF Doc. 11]; the opposition to the Motion for Summary Judgment and *Statement of Contested Material Facts in Opposition to Motion for Summary Judgment*, filed by Plaintiffs Richard and Amy Trahant (the "Trahants"), [ECF Docs. 18 & 19]; and the reply brief filed by the Defendants in support of the Motion for Summary Judgment, [ECF Doc. 26].

2.  *Motion for Leave To File First Amended Complaint* filed by the Trahants (the "Motion To Amend Complaint"), [ECF Doc. 14], and the opposition to that motion filed by the Defendants, [ECF Doc. 59].

3.  *Motion for Leave To Conduct Limited Discovery in Opposition to Motion for Summary Judgment Without Waiver of Objections* (the "Rule 56(d) Motion"), filed by the Trahants,

[ECF Doc. 49]; the Defendants' opposition to that motion, [ECF Doc. 52]; and the Trahants' reply brief filed in support of the Rule 56(d) Motion, [ECF Doc. 54].

For the reasons discussed below, the Court **GRANTS** the Defendants' Motion for Summary Judgment, **GRANTS** the Trahants' Motion To Amend Complaint, and **DENIES** the Trahants' Rule 56(d) Motion.

## JURISDICTION AND VENUE

This Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. § 1334 and the matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2). *See Trahant v. Mintz (In re Roman Catholic Church of the Archdiocese of New Orleans)*, Adv. No. 23-1018, 2023 WL 8359051, at *5 (Bankr. E.D. La. Nov. 30, 2023). The venue of this case is proper under 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL POSTURE

On May 1, 2020, The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese" or, post-petition, the "Debtor") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code in this Court. [No. 20-10846, ECF Doc. 1]. Prior to filing, the Archdiocese had been defending against at least 34 pending lawsuits filed in Louisiana state court between 2018 and 2020 by individuals alleging claims of sexual abuse by priests or lay persons employed or supervised by the Archdiocese and complicity of the Archdiocese in that abuse (the "Abuse Cases"). Richard Trahant represented plaintiffs in some of the Abuse Cases. When the Archdiocese filed its petition for bankruptcy relief, all of the Abuse Cases were stayed pursuant to 11 U.S.C. § 362(a), but several of the plaintiffs and their counsel in the Abuse Cases, including Trahant, mobilized quickly and have participated from the very start of the Debtor's bankruptcy case.

2

The Office of the United States Trustee (the "UST") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1) on May 20, 2020, and reconstituted the membership of the Committee a number of times to deal with the contours of the case. [No. 20-10846, ECF Docs. 94, 151, 478, 1575, 1618 & 2081]. Early in the case, the Court approved the Committee's retention of the law firms of Locke Lord LLP and Pachulski Stang Ziehl & Jones LLP as counsel for the Committee. [No. 20-10846, ECF Docs. 256 & 257]. Individual members of the Committee retained their own counsel to advise them regarding their individual claims against the estate and to assist them in fulfilling their duties as members of the Committee. For two years, Richard Trahant served as counsel to several individual members of the Committee.

In January 2022, the Debtor notified the Court of its belief that individual(s) had breached this Court's Protective Order governing discovery exchanged between the Debtor and the Committee in the Debtor's bankruptcy case. The Debtor requested discovery from the Committee and an evidentiary hearing to determine the root of the breach. After months of informal discovery between the parties followed by an official independent investigation by the UST involving numerous depositions and robust discovery, the Court memorialized and detailed its conclusions in an Order dated June 7, 2022 (the "June 7, 2022 Order"). [No. 20-10846, ECF Doc. 1574]. In that Order, the Court found, among other things, that Trahant had knowingly and willfully violated the Protective Order by disclosing confidential, protected information obtained through discovery in the bankruptcy case to third parties, including the media. The Court's June 7, 2022 Order also instructed the UST to remove the individual Committee members represented by Trahant from the Committee to prevent Trahant from having further access to confidential, protected information. A week later, the Court issued a separate *Order To Show Cause* to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of the Court's Protective Order.

3

Months later, the Court held the show-cause hearing. After considering attorney argument and sworn testimony provided by Trahant at that hearing, the Court issued a *Memorandum Opinion and Order* dated October 11, 2022, detailing the factual and legal bases for imposing sanctions against Trahant in the amount of $400,000 for willfully violating this Court's Protective Order. That amount represented a fraction of the billable time spent by counsel for the Debtor and the Committee in investigating the source of the leak for months and participating in the formal, independent investigation conducted by the UST. [No. 20-10846, ECF Docs. 1574, 1589 & 1844].[1]

Almost one year after the issuance of the June 7, 2022 Order, the Trahants filed a *Petition for Damages* in Louisiana state court against the Defendants on June 2, 2023, asserting claims for abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium, all in connection with the Defendants' alleged improper service of this Court's June 7, 2022 Order (the "State Court Action"). [ECF Doc. 7]. The Defendants timely removed the State Court Action to the United States District Court for the Eastern District of Louisiana under 28 U.S.C. §§ 1441, 1446, and 1452. [E.D. La. No. 23-2053, ECF Doc. 1]. The Trahants filed a motion to remand the State Court Action in the District Court. [E.D. La. No. 23-2053, ECF Doc. 9].

---

[1]     Trahant and individual former members of the Committee appealed those Orders to the United States District Court for the Eastern District of Louisiana, which affirmed this Court's rulings. *See In re Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1738 (E.D. La. Aug. 11, 2022) (ECF Doc. 38 (dismissing former Committee members' appeal for lack of standing)) & (E.D. La. June 21, 2023) (ECF Doc. 74 (declining Committee members' request to vacate ECF Doc. 38)); *In re Roman Catholic Church of the Archdiocese of New Orleans*, Nos. 22-1740 c/w 22-4101 (E.D. La. Mar. 27, 2023) (ECF Doc. 88 (affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022) & (E.D. La. June 21, 2023) (ECF Doc. 107 (denying Trahant's motions for rehearing and to vacate ECF Doc. 88 and corresponding judgments, but substituting Order and Reasons affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022)). The United States Court of Appeals for the Fifth Circuit recently affirmed the District Court's orders and judgment related to the former members of the Committee. *See Adams v. Roman Catholic Church of the Archdiocese of New Orleans (In re Roman Catholic Church of the Archdiocese of New Orleans)*, 101 F.4th 400 (5th Cir. 2024). Trahant's appeal remains pending before the Fifth Circuit. *See Trahant v. Official Comm. of Unsecured Creditors*, No. 23-30466 (filed July 17, 2023).

The Defendants requested that the District Court refer the State Court Action to this Court pursuant to the District Court's local rules and its General Order of Reference, asserting that the Trahants' lawsuit was not only "related to" the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(b), but that the lawsuit implicates the long-standing *Barton* doctrine, a common-law principle that bars suits against court-appointed trustees and other fiduciaries absent court permission. [E.D. La. No. 23-2053, ECF Doc. 11 (citing *Barton v. Barbour*, 104 U.S. 126, 128 (1881))]. On July 14, 2023, the District Court referred the State Court Action to this Court for all purposes, finding that

> the most efficient course of action for the administration of justice, in general, and this case, in particular, is to refer to the case to the bankruptcy judge for determination in the first instance of the issues raised by the motion to remand. At bottom, the case was removed on grounds of bankruptcy jurisdiction because the plaintiffs' claims revolve around the interpretation, implementation, and enforcement of an order of the bankruptcy court. It appears to this Court, then, that the notice of removal invokes federal bankruptcy jurisdiction because the plaintiffs' claims constitute either a core proceeding [under 28 U.S.C. § 157(b)(2)] . . . or, at least, a proceeding related to a title 11 case. However, the determination of these threshold issues, as raised by the motion to remand, are left to the bankruptcy judge, who is well-equipped to address such matters (notwithstanding this Court's preliminary observations) given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function under the *Barton* doctrine, which vests only the bankruptcy court with the authority to grant leave for the pursuit of any claims directed against officials appointed by the bankruptcy court concerning acts done in their official capacity.

[E.D. La. No. 23-2053, ECF Doc. 12 (internal quotations and citation omitted)]. Upon referral to this Court, the Trahants' State Court Action was docketed as the Adversary Proceeding. On August 15, 2023, the District Court denied the Trahants' motion to reconsider its decision and withdraw its referral of the State Court Action to this Court, writing:

> [T]he Court again concludes that reference to the bankruptcy court for the determination of certain pretrial issues (including subject-matter jurisdiction) in the first instance is appropriate where plaintiffs' claims and their pending motion to remand implicate the bankruptcy court's gatekeeping function under the *Barton* doctrine. . . . And relatedly, under its gatekeeping function, the bankruptcy court is

empowered to determine—in the first instance—whether subject-matter jurisdiction exists, and so it may properly adjudicate plaintiffs' motion to remand. Thus, plaintiffs' contention that reversal or withdrawal of the reference is proper because the action fails even to invoke "related to" jurisdiction under 28 U.S.C. § 1334(b) is inapposite.

[E.D. La. No. 23-2053, ECF Doc. 18 (internal quotations and citations omitted)].

On November 30, 2023, this Court issued a *Memorandum Opinion and Order*, denying the Trahants' motion to remand, finding, among other things, that: (i) the *Barton* doctrine requires that the claims asserted in the State Court Action either be brought in this Court or with leave of this Court to file the claims in another venue; and (ii) the State Court Action constitutes a core proceeding that this Court may hear and determine on a final basis because the Trahants' claims arise from the Defendants' roles as the Debtor's professionals in the bankruptcy case, specifically, their obligations and conduct as professionals of the Debtor to serve this Court's June 7, 2022 Order, and thus those claims do not exist outside of the bankruptcy process. [ECF Doc. 60].

Prior to discovery being exchanged between the parties, the Defendants filed the Motion for Summary Judgment in the Adversary Proceeding, asserting, among other things, that they are entitled to judgment as a matter of law on all claims asserted in the State Court Action because they are immune from suit for their conduct in serving this Court's June 7, 2022 Order.

## DISCUSSION

The parties agree upon or do not dispute the following material facts, most of which emanate from Orders of this Court and hearings before this Court.[2]

---

[2]     In considering a motion for summary judgment, a court may take judicial notice of its own records. *See ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981); *First Bank & Tr. v. Scottsdale Ins. Co.*, No. 14-2017, 2015 WL 5559829, at *2 (E.D. La. Sept. 21, 2015).

**A. Relevant Orders of the Court Issued Early in the Debtor's Bankruptcy Case**

The Archdiocese filed for chapter 11 bankruptcy relief in May 2020 and has since remained in possession of its property and managed its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. Through its counsel, Mark Mintz and the Jones Walker firm, the Debtor filed several common motions requesting "first-day" substantive and procedural relief designed to transition the Debtor into chapter 11. Trahant and other attorneys filed limited objections to various of the "first-day" motions. [No. 20-10846, ECF Doc. 29].

*1. Employment Orders*

In those first days and weeks of the Debtor's case, this Court issued Orders granting motions filed by the Debtor requesting retention of the Jones Walker law firm as counsel and Donlin Recano as the claims and noticing agent for the Debtor. [No. 20-10846, ECF Docs. 1, 51, 170 & 188]. No objection was filed to Jones Walker's employment application and the Court granted the Debtor's request to retain Jones Walker as bankruptcy counsel pursuant to 11 U.S.C. §§ 327, 328(a), and 1103. [No. 20-10846, ECF Doc. 170].

In large and complex chapter 11 cases, claims and noticing agents are commonly employed to maintain the claims register and provide accurate, timely, and cost-effective noticing of pleadings and orders to all creditors and other parties. No objection was filed to the Debtor's application to employ Donlin Recano. Here, the Court's Order granting the Debtor's request to employ Donlin Recano (the "Donlin Recano Retention Order") authorized and directed Donlin Recano to perform the following tasks, among others:

(1)  provide notice and service of pleadings, orders, and notices limited to those matters formally filed on the docket of this Case.

(2)  . . . receive, maintain, record, and otherwise administer the proofs of claim filed in this Case . . . .

7

(3)      . . . serve as the custodian of court records and . . . be designated as the authorized repository for all proofs of claim filed in the Case and . . . maintain the official claims register for the Debtor, . . . provide the Clerk with a certified duplicate thereof upon request of the Clerk, and . . . provide public access to every proof of claim unless otherwise ordered by the Court.

(4)      . . . to obtain a post office box or address for the receipt of proofs of claim.

(5)      . . . to provide assistance with, among other things, certain data processing and ministerial administrative functions, including, but not limited to, such functions related to the Debtor's schedules, statements of financial affairs and master creditor lists, and any amendments thereto.

(6)      . . . take such other action to comply with all duties set forth above.

[No. 20-10846, ECF Doc. 188]. The Donlin Recano Retention Order provided that "[t]his Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Final Order." *Id.*

### 2.   *Order To Seal Mailing Matrix and Other Documents*

Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007(a)(1), and this Court's Local Rule 1007-2(A) require voluntary petitioners to file with the petition a list containing the names and addresses of all individuals and entities that will be included in a debtor's schedules and Bankruptcy Rules 2002 and 9010 allow parties in interest to request notices of pleadings filed in a bankruptcy case (the "Mailing Matrix"). "While simply a list of creditors' names and addresses, a creditor matrix is critically important . . . because it is used by the debtor, the Clerk of Court, and other parties in interest as the service list when either the Code or Rules require service of a pleading on all creditors." *In re Helios & Matheson Analytics, Inc.*, 629 B.R. 772, 779–80 (Bankr. S.D.N.Y 2021) (internal quotations and citation omitted).[3]

---

[3]      Under the Bankruptcy Code, "creditor" means

(A)      An entity that has a claim against the debtor that arose at the time of or before the order of relief concerning the debtor;

Because many creditors of the Debtor are individual abuse survivors and to protect them from further anguish, the Court also entered Orders authorizing the Debtor to file certain documents under seal, including an unredacted copy of the Mailing Matrix and other documents that, if made public, would reveal confidential information regarding the identities of those claimants and the nature of those claims (the "Order To Seal"). [No. 20-10846, ECF Docs. 53 & 177].[4] Among other things, the Court's Order To Seal authorized and directed the Debtor to:

    a. file under seal portions of the Schedules, including but not limited to Schedule F, the Statement of Financial Affairs ("SOFA") and an unredacted copy of the Master Creditor Mailing Matrix and any other pleadings, reports or other documents that might be filed from time to time in this Chapter 11 Case, that, if made publicly available, would disclose any of the Confidential Identifying Information;

    b. publicly file redacted copies of the Master Creditor Mailing Matrix and portions of the Schedules and SOFA (and any other documents and filings containing

---

    (B)    entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

    (C)    entity that has a community claim.

11 U.S.C. § 101(10). "Claim" means

    (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). "[T]he legislative history [of § 101(5)] unmistakably states that the language employed was chosen so that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case [to] permit[] *the broadest possible relief* in the bankruptcy court.'" *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 924 (Bankr. W.D. Tex. 1995), *vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998) (quoting H.R. REP. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6266).

[4]    Trahant and his colleagues filed a limited objection, "mostly technical in nature," to the relief sought in the Debtor's motion to seal. [No. 20-10846, ECF Doc. 29]. Acknowledging that "[c]onfidentiality for abuse victims is extremely important," Trahant and his colleagues recommended granting the relief on an interim basis to allow "other claimants and stakeholders, and an official committee . . . to weigh in on a final form of order." *Id.* On May 6, 2020, the Court granted the motion to seal on an interim basis and set the final hearing on the motion for June 18, 2020. [No. 20-10846, ECF Doc. 52]. As of June 18, 2020, no party had filed additional objections to the motion to seal and the Court granted the motion on a final basis. [No. 20-10846, ECF Doc. 177].

Confidential Identifying Information) so as to eliminate Confidential Identifying Information from those documents;

c. identify, schedule, and notify creditors who are individuals whose claims against the Debtor are premised on allegations of abuse who are represented by counsel by and through their counsel on Schedule F and the Master Creditor Mailing Matrix;

d. provide copies of the sealed portions of any such pleadings, reports, or documents to the Office of the United States Trustee, as necessary, and authorizing the United States Trustee to use such documents in the discharge of its duties and obligations, including but not limited to the solicitation and appointment of any committee under 11 U.S.C. § 1102 but as protected by 11 U.S.C. § 107(c)(3);

e. provide reports, documents and pleadings sealed to protect Confidential Identifying Information to counsel for any committee appointed under 11 U.S.C. § 1102 who has been retained pursuant to Court approval, but only after confidentiality procedures for Confidential Identifying Information are approved by the Court;

f. file a full and complete unredacted copy of the mailing matrix above (the "Confidential Mailing List") with the Court to be held under seal pending further order of the Court; and

g. provide that if the Debtor's claims and noticing agent, Donlin, Recano & Company, Inc. (the "Claims Agent") serves any documents upon any entity or person listed on the Confidential Mailing List, the Claims Agent is authorized to either (i) note in the certificate of service that the parties served include entities or persons listed on the Confidential Mailing List; or (ii) refer to said entities or persons listed on the Confidential Mailing List with a unique identification number.

[No. 20-10846, ECF Doc. 177]. The Order To Seal provided that "[t]his Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Final Order." [No. 20-10846, ECF Doc. 177].

### 3. Limit-Service Order

Bankruptcy Rule 2002 allows "the clerk, or some other person as the court may direct" to serve pleadings, notices, and orders "in the manner and form directed by the court." FED. R. BANKR. P. 2002. Practically speaking, bankruptcy courts commonly require movants or

other parties in interest to serve court orders because the sheer volume of orders to be served and

number of parties in interest that must be served in bankruptcy cases imposes too onerous a

financial burden on a bankruptcy court were the court to serve those orders itself.  Here, because

the Mailing Matrix included thousands of individuals and entities, the Court also entered an Order

granting the Debtor's request to limit notice and establish notice procedures to curb noticing costs

while still providing sufficient due process to parties in interest (the "Limit-Service Order").  [No.

20-10846, ECF Doc. 22]; *see also* General Order 2019-4 (Court's Procedures for Complex Chapter

11 Cases).   The Limit-Service Order provided that, with certain exceptions, service of most

pleadings in the case, whether by the Debtor or another party, shall be limited to the following

entities and their counsel of record:

    a)  the Office of the United States Trustee for the Eastern District of Louisiana;

    b)  the debtor(s);

    c)  counsel for the debtor(s);

    d)  counsel for any official committees;

    e)  the debtor(s)' prepetition and post-petition secured lenders, including any other party asserting a security interest in assets of the debtor or their counsel who has appeared in the case;

    f)  the debtor(s)' twenty (20) largest unsecured creditors (or in the case of jointly administered cases, the debtors' thirty (30) largest unsecured creditors);

    g)  those persons who have formally appeared in the chapter 11 case and requested service pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; [and]

    h)  all applicable governmental agencies to the extent required by the Bankruptcy Rules and the Local Rules.

[No. 20-10846, ECF Doc. 22].  But, pursuant to Bankruptcy Rule 2002 and this Court's Chapter

11 Complex Case Procedures, the Limit-Notice Order nonetheless required service of the

following pleadings to the entire Mailing Matrix:

a) Notice of the first meeting of creditors pursuant to section 341 of the Bankruptcy Code;

b) Notice of the time fixed for filing proofs of claim;

c) Notice of the hearing to consider approval of the disclosure statement and confirmation of a plan;

d) Notice of the times fixed for filing objections to the disclosure statement and plan;

e) Notice of the times fixed to submit ballots for accepting or rejecting the plan;

f) Notice of any hearing on dismissal or conversion of this Chapter 11 Case; and

g) Notice of any proposed sale of all or substantially all of the Debtor's assets.

[No. 20-10846, ECF Doc. 22]. The Limit-Notice Order also provided that "this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order." [No. 20-10846, ECF Doc. 22].

None of those Orders were challenged or appealed and all are final Orders.

**B. Relevant Orders and Instructions Issued by this Court Regarding Service of the June 7, 2022 Order**

As described above, in January 2022, the Debtor notified the Court of its belief that individual(s) had breached this Court's Protective Order governing discovery exchanged between the Debtor and the Committee in the Debtor's bankruptcy case. [No. 20-10846, ECF Doc. 1256]. The Debtor requested discovery from the Committee and an evidentiary hearing to determine the root of the breach. *See id*. After months of informal discovery between the parties followed by an official independent investigation by the UST involving numerous depositions and robust discovery, the Court memorialized and detailed its conclusions in the June 7, 2022 Order. [No. 20-10846, ECF Doc. 1574]. In that Order, the Court found, among other things, that Trahant had knowingly and willfully violated the Protective Order by disclosing confidential, protected information obtained through discovery in the bankruptcy case to third parties including the media.

*See id.*   The Court's June 7, 2022 Order also instructed the UST to remove the individual Committee members represented by Trahant from the Committee to prevent Trahant from having further access to confidential, protected information.  *See id.*  As to service of the June 7, 2022 Order, the Court instructed in the text of the Order that "counsel for the Debtor serve this Order via first-class U.S. Mail on those parties in interest who will not receive service via this Court's CM/ECF system and file a certificate of service within three days."  *Id.*

Per the Court's June 7, 2022 Order, the UST filed a *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors*, replacing members of the Committee who were expelled due to Trahant's actions in violating the Court's Protective Order.  [No. 20-10846, ECF Doc. 1575].  During the investigation into the breach of the Protective Order, this Court had limited access of confidential documents produced by the Debtor to "attorneys' eyes only," meaning that only counsel for the Committee could view confidential documents pending completion of the UST's investigation and the Court's issuance of its findings.  Days after the issuance of the June 7, 2022 Order, this Court held a status conference with the parties in this case on June 13, 2022, to discuss the new Committee members' access to confidential documents as well as answer parties' questions regarding service of the June 7, 2022 Order.  [No. 20-10846, ECF Doc. 1602].

At that hearing, the Court stated its intention, as instructed in the text of the June 7, 2022 Order, for the Order be served on the entire Mailing Matrix and that service not be limited to the Limit-Notice Order.  The Court explained that its findings contained in the Order broadly affected the Committee's constituency and other parties' interests in the case and, therefore, the June 7, 2022 Order warranted service to the entire Mailing Matrix.  *See id*.  At the request of counsel for the Committee, however, the Court agreed to redact the names of the four expelled Committee members from the June 7, 2022 Order.  *See id*.  Also at the request of the parties, the Court further

instructed counsel for the Committee to serve the June 7, 2022 Order to abuse claimants listed on the Mailing Matrix. *See id*. Donlin Recano and counsel for the Committee coordinated and served the June 7, 2022 Order by mail on the individuals and entities listed on the Mailing Matrix. [No. 20-10846, ECF Docs. 1581, 1621 & 1623].

### C.  Summary Judgment Standard

A court grants summary judgment when the pleadings, discovery responses, and affidavits show no genuine dispute as to any material fact and the evidence entitles the movant to judgment at trial. FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). A court views the facts and evidence in the light most favorable to the nonmovant. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).

A party seeking summary judgment always bears the initial burden of informing the court of the basis for the motion and identifying portions of the record which it asserts demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. To satisfy that burden, the moving party must either "submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. at 331–32. Although the Court must consider the evidence with all reasonable inferences in favor to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *See Webb v. Cardiothoracic Surgery Assocs. of N. Tex.*, 139 F.3d 532, 536 (5th Cir. 1998). "[I]f the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party

is entitled to summary judgment." *Addison v. La. Reg'l Landfill Co.*, No. 19-11133, 2024 WL 3274645, at *3 (E.D. La. July 1, 2024) (citations omitted).

> **D. The Defendants Are Entitled to Derivative Absolute Immunity from Suit as They Acted Pursuant to Orders of this Court.**

Judges have absolute immunity from liability for damages for acts taken pursuant to their jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"); *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 411 (5th Cir. 2009) (holding that judges are entitled to absolute immunity from suit for all "judicial acts which are not performed in the clear absence of all jurisdiction"). Indeed, judicial immunity bestows immunity from suit as well as assessment of damages. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). When trustees and debtors-in-possession[5] act as an arm or extension of the court, they are derivatively entitled to the judge's absolute immunity for all actions taken pursuant to a court order. *See Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981); *Baron v. Sherman (In re Ondova Ltd. Co.)*, 914 F.3d 990, 993–94 (5th Cir. 2019). In turn, that absolute immunity extends to the professionals of trustees and debtors-in-possession acting at the direction of the trustee or debtor-in-possession and pursuant to court orders. *See In re Ondova Ltd. Co.*, 914 F.3d at 994.

The fact that all of the Defendants are professionals of the Debtor is not in dispute. It is also not disputed that this Court instructed the June 7, 2022 Order to be served on all parties in interest identified by the Mailing Matrix. All of the Defendants' actions forming the basis for the

---

[5]   With exceptions not relevant here, "a debtor in possession shall have all the rights, . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a).

claims alleged in the State Law Action—abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium—were committed by the act of complying with this Court's orders instructing the Defendants to serve the June 7, 2022 Order on all individuals and entities listed on the Mailing Matrix.  Like the trustee in *Boullion*, the Defendants here acted "under the supervision and subject to the orders of the bankruptcy judge," and, therefore, as an arm of the Court in serving the June 7, 2022 Order, they are entitled to derivative absolute immunity as a matter of law.  639 F.2d at 214 (affirming the grant of summary judgment on absolute immunity grounds).[6]

### E.  The Trahants' Requested Discovery Under Rule 56(d) Is Not Likely To Produce Facts Needed To Create a Genuine Issue of Material Fact.

In their Rule 56(d) Motion, the Trahants request leave to conduct discovery to more fully oppose the Defendants' Motion for Summary Judgment, asserting that "[t]here are numerous questions of fact raised by the Motion for Summary Judgment that can only be addressed through formal discovery processes."  [ECF Doc. 49].

Under Federal Rule of Civil Procedure 56(d), made applicable here by Bankruptcy Rule 7056, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  FED. R. CIV. P. 56(d).  "Courts are authorized under Rule 56(d) to defer ruling on a summary judgment motion and allow discovery, but Rule 56 does not require that any discovery take place before summary judgment can be granted."  *Mendez v. Poitevent*, 823 F.3d

---

[6]     The Trahants also appear to object to the contents of the Mailing Matrix as well as this Court's Order sealing the Mailing Matrix.  Those complaints are best directed to the Court through Federal Rule of Civil Procedure 60, made applicable to these proceedings by Federal Rule of Bankruptcy Proceeding 9024. But any suit against the Defendants for acting pursuant to this Court's instructions is barred by the absolute immunity doctrine.

326, 336 (5th Cir. 2016) (internal quotations and citation omitted). "And under Rule 56(d), deferring summary judgment and ordering discovery is appropriate only if the 'nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Id*. (quoting FED. R. CIV. P. 56(d)). Indeed, "[a] party 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'" *Id*. (quoting *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)). Rather, "the party seeking to continue a motion for summary judgment to obtain further discovery must demonstrate (1) 'why he needs additional discovery' and (2) 'how the additional discovery will create a genuine issue of material fact.'" *Menard v. LLOG Exploration Co., LLC*, 259 F. Supp. 3d 475, 479 (E.D. La. 2017) (quoting *Krim v. BancTexas Grp., Inc*., 989 F.2d 1435, 1442 (5th Cir. 1993)).

The Fifth Circuit "has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1285 (5th Cir. 1990). Indeed, "[i]f it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Access Telecom, Inc. v. MCI Telcomm. Corp*., 197 F.3d 694, 720 (5th Cir. 1999).

Although Rule 56(d) motions are "broadly favored," this Court finds that such relief is not warranted here. Counsel for the Trahants attached an affidavit as an exhibit to the Trahants' opposition to the Motion for Summary Judgment indicating that the "information essential to allow plaintiffs to properly controvert the defendants' Motion for Summary Judgment" would include (1) "a complete list of recipients of the June 7, 2022 Trahant Order"; (2) "dates when the mailing

was sent to each recipient"; (3) "whether and when defendants had notice that the noticing was overbroad"; and (4) an unredacted version of the Mailing Matrix. [ECF Doc. 18-6 (declaration of Jack E. Truitt)]. But the theory of the Trahants' State Court Action is that the Defendants injured them by the act of serving the Court's June 7, 2022 Order on the individuals and entities on the Mailing Matrix in the absence of the Court's authority to do so. Even if the Trahants were to receive the information above concerning the composition of the Mailing Matrix, that information would not produce the facts they need to withstand the Motion for Summary Judgment based on application of derivative absolute immunity. That information is thus insufficient to create a genuine issue of material fact where the undisputed facts indicate that the Defendants served this Court's June 7, 2022 Order on the individuals and entities listed on the Mailing Matrix at the direction of this Court.

Therefore, the Court denies the Trahants' request for further discovery under Rule 56(d).

**F. The Court Grants the Trahants' Motion To Amend, But Treats Defendants' Motion for Summary Judgment as Directed to the Amended Complaint.**

Shortly after the Defendants filed the Motion for Summary Judgment, the Trahants filed the Motion To Amend Complaint solely to assert a demand for a jury trial. [ECF Doc. 14]. The Trahants acknowledge that the proposed amended complaint "does not add new claims or factual allegations." [ECF Doc. 14 (Mem. in Support)]. Thus, this Court treats the Defendants' Motion for Summary Judgment as directed to the amended complaint because the defects in the Trahants' original State Court Action reappear in their amended complaint. *See Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 16-1034, 2017 WL 3279158, at *1 n.1 (N.D. Tex. Aug. 2, 2017) (citing *Holmes v. Nat'l Football League*, 939 F. Supp. 517, 522 n.7 (N.D. Tex. 1996); *Patton Elec. Co. v. Rampart Air, Inc.*, 777 F. Supp. 704, 713 (N.D. Ind. 1991)); *Methodist Hosps. of Dall. v. Wal-Mart Stores, Inc.*, No. 02-0656, 2003 WL 21266775, at *1 n.2 (N.D. Tex. May 30, 2003).

## CONCLUSION

For the aforementioned reasons, the Court concludes that no genuine issues of material fact exist and the Defendants are entitled to summary judgment on all claims asserted in the Trahants' State Court Action.

Accordingly,

**IT IS ORDERED** that the Defendants' *Motion for Summary Judgment and Incorporated Memorandum in Support*, [ECF Doc. 11], is **GRANTED**.

**IT IS FURTHER ORDERED** that the Trahants' *Motion for Leave To File First Amended Complaint,* [ECF Doc. 14], is **GRANTED**.

**IT IS FURTHER ORDERED** that the Trahants' *Motion for Leave To Conduct Limited Discovery in Opposition to Motion for Summary Judgment Without Waiver of Objections*, [ECF Doc. 49], is **DENIED**.

A separate judgment on the amended Complaint filed in the above-captioned Adversary Proceeding consistent with this *Memorandum Opinion and Order* will be entered contemporaneously and in accordance with Bankruptcy Rules 7058, 5003, and 9021.

New Orleans, Louisiana, this 16th day of July, 2024.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE